UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| AMAZON.COM INC., et al.,<br><br>Plaintiff(s),<br>v.<br><br>SHANGHAI HAOQI INTERNATIONAL TRADE CO LTD, et al.,<br><br>Defendant(s). | CASE NO. C25-2482-KKE<br><br>ORDER GRANTING MOTION FOR DEFAULT JUDGMENT |

Plaintiff UL LLC is a "worldwide leader in product testing and certification" that tests products, including electric bicycles, to certify that they satisfy applicable safety standards. Dkt. No. 1 ¶ 3. UL owns registered certification and service marks ("UL Marks") that UL may authorize manufacturers to use in connection with their products. *Id.* ¶¶ 3–5.

Together with Plaintiffs Amazon.com, Inc. and Amazon.com Services LLC (collectively "Amazon"), UL filed this action, alleging that Defendant Shanghai Haoqi International Trade Co., Ltd. ("Shanghai Haoqi") sold bicycles with counterfeit UL Marks via Amazon's store. Dkt. No. 1 ¶ 5.[1] Shanghai Haoqi has not appeared or otherwise defended this action, and the Court entered an order of default against it. Dkt. No. 13.

[1] Plaintiffs also sued Doe Defendants, who have since been dismissed. *See* Dkt. No. 14.

Plaintiffs have now moved for entry of default judgment. Dkt. No. 17.[2] Plaintiffs have shown that they are entitled to default judgment on their claims against Shanghai Haoqi, and the Court will grant Plaintiffs' motion and award the damages and injunctive relief Plaintiffs request.

## I. BACKGROUND

Plaintiffs allege that, between July 24, 2023, and October 20, 2025, Shanghai Haoqi advertised, marketed, offered, distributed, and sold electric bicycles via its HAOQI EBIKE Direct selling account on Amazon, using counterfeit UL Marks without authorization to deceive customers that the products were certified by UL. Dkt. No. 1 ¶ 5, Dkt. No. 19 ¶ 3. In this action, UL asserts claims for trademark counterfeiting and infringement against Shanghai Haoqi. Dkt. No. 1 ¶¶ 42–48. Plaintiffs also bring claims for false designation of origin and for violation of Washington's Consumer Protection Act ("CPA"). *Id.* ¶¶ 49–63. Amazon.com Services LLC ("Amazon Services") separately brings a breach of contract claim. *Id.* ¶¶ 64–68.

Shanghai Haoqi waived service of process yet failed to respond by the deadline, and the Court entered default against Shanghai Haoqi in May 2026. Dkt. Nos. 8, 13. Plaintiffs filed a motion for default judgment in August 2026. Dkt. No. 17. The Court will grant Plaintiffs' motion for default judgment for the following reasons.

## II. ANALYSIS

### A. The Court Has Jurisdiction over the Subject Matter and the Parties.

Before entering default judgment, the Court must confirm that it has both subject matter and personal jurisdiction. *See In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999) ("When entry of judgment is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties.").

[2] The Court refers to the parties' briefing by CM/ECF page number.

*1. The Court Has Subject Matter Jurisdiction over Plaintiffs' Claims.*

The Court has federal question jurisdiction over Plaintiffs' claims for trademark infringement, false designation of origin, and false advertising, and supplemental jurisdiction over the remaining claims. Dkt. No. 1 ¶ 12.

*2. The Court Has Personal Jurisdiction over Shanghai Haoqi.*

The Court also has personal jurisdiction over Shanghai Haoqi. A forum selection clause alone can confer personal jurisdiction. *Chan v. Soc'y Expeditions, Inc.*, 39 F.3d 1398, 1406–07 (9th Cir. 1994). The Business Solutions Agreement ("BSA") between Amazon and Shanghai Haoqi provides that Amazon may bring claims related to counterfeit products in the "Governing Courts," and the BSA defines "Governing Courts" as any state or federal court in King County, Washington, which includes this Court. Dkt. No. 1-2 at 13. Accepting Plaintiffs' factual allegations as true, the Court has personal jurisdiction over Shanghai Haoqi.

**B. Legal Standards on a Motion for Default Judgment**

The Court's decision to enter a default judgment is discretionary. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). The Court "ordinarily disfavor[s]" default judgment because "[c]ases should be decided upon their merits whenever reasonably possible." *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986). In considering a motion for default judgment, the Court accepts "the well-pleaded factual allegations" as true, but "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992) (cleaned up).

When considering whether to exercise its discretion to enter a default judgment, the Court may consider the following *Eitel* factors:

(1) the possibility of prejudice to the plaintiff,
(2) the merits of plaintiff's substantive claim,
(3) the sufficiency of the complaint,

> (4) the sum of money at stake in the action;
> (5) the possibility of a dispute concerning material facts;
> (6) whether the default was due to excusable neglect, and
> (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel*, 782 F.2d at 1471–72.

The Western District of Washington also requires a party seeking default judgment to provide "a declaration and other evidence establishing plaintiff's entitlement to a sum certain and to any nonmonetary relief sought." Local Civil Rules W.D. Wash. LCR 55(b)(2). "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

**C. Plaintiffs are Entitled to Default Judgment Against Shanghai Haoqi.**

The Court applies the *Eitel* factors to this case and finds that they favor a default judgment for all Plaintiffs' claims.

*1. Possibility of Prejudice to Plaintiffs*

For the first *Eitel* factor, the Court analyzes the possibility of prejudice to Plaintiffs. Prejudice exists when "the plaintiff has no recourse for recovery other than default judgment." *Curtis v. Illumination Arts, Inc.*, 33 F. Supp. 3d 1200, 1211 (W.D. Wash. 2014) (cleaned up).

In this case, Shanghai Haoqi has failed to respond to or otherwise defend against Plaintiffs' complaint. Without a default judgment, Plaintiffs would have no recourse. Therefore, the Court finds the first *Eitel* factor favors a default judgment.

*2. Sufficiency and Merits of Plaintiffs' Complaint*

The Court analyzes the second and third *Eitel* factors—the merits of Plaintiffs' substantive claim and the sufficiency of the complaint—together. *See, e.g.*, *Curtis*, 33 F. Supp. 3d at 1211. For the following reasons, the Court finds that Plaintiffs have alleged facts in their complaint showing that Shanghai Haoqi is liable on the claims asserted.

a. UL's Trademark Counterfeiting and Infringement Claim

As noted above, UL alleges that Shanghai Haoqi counterfeited and infringed UL's Marks, in violation of 15 U.S.C. § 1114. Dkt. No. 1 ¶¶ 42–48.

To prevail on a trademark infringement claim under 15 U.S.C. § 1114, a plaintiff must show that the defendant used (1) a reproduction, counterfeit, copy or colorable imitation of the plaintiff's registered trademark; (2) without the plaintiff's consent; (3) in commerce; (4) in connection with the sale, offering for sale, distribution or advertising of any goods; (5) where such use is likely to cause confusion, or to cause a mistake or to deceive. *Amazon.com v. Kurth*, No. 2:18-cv-00353-RAJ, 2019 WL 3426064, at *2 (W.D. Wash. July 30, 2019).

For the fifth element—the likelihood of confusion—a court tests whether the defendant's use of the plaintiff's trademark is likely to confuse a reasonably prudent consumer in the marketplace as to the origin of the product. *Dreamwerks Prod. Grp., Inc. v. SKG Studio*, 142 F.3d 1127, 1129 (9th Cir. 1998). However, counterfeit marks are inherently confusing. *See Gucci America, Inc. v. Duty Free Apparel, Ltd.*, 286 F. Supp. 2d 284, 287 (S.D.N.Y. 2003) ("[C]onfusing the customer is the whole purpose of creating counterfeit goods."). Therefore, a plaintiff can establish likelihood of confusion by showing that the infringing mark is counterfeit. *Coach, Inc. v. Pegasus Theater Shops*, No. C12-1631-MJP, 2013 WL 5406220, at *3 (W.D. Wash. Sept. 25, 2013).

Accepting Plaintiffs' allegations as true, the Court finds that Plaintiffs have sufficiently stated their claim. UL owns the UL Marks, and Shanghai Haoqi used the counterfeit UL Marks without UL's consent in commerce. Dkt. No. 1 ¶¶ 36–38. As Shanghai Haoqi used counterfeit UL Marks, their use of the marks is inherently confusing. Therefore, the Court finds the second and third *Eitel* factors favor a default judgment for UL on its trademark counterfeiting and infringement claim.

b. Plaintiffs' False Designation of Origin Claim

Plaintiffs brought claims against Shanghai Haoqi for false designation of origin under 15 U.S.C. § 1125(a)(1)(A). Dkt. No. 1 ¶¶ 49–58.

To prevail on a claim for false designation of origin, "a plaintiff must prove that the defendant 1) used in commerce 2) any word, false designation of origin, false or misleading description, or representation of fact, which 3) is likely to cause confusion or mistake, or to deceive, as to sponsorship, affiliation, or the origin of the goods or services in question." *Luxul Tech. Inc. v. Nectarlux, LLC*, 78 F. Supp. 3d 1156, 1170 (N.D. Cal. 2015). A plaintiff is not required to own the trademarks that are infringed in order to state a claim under 15 U.S.C. § 1125(a). *See Obesity Rsch. Inst., LLC v. Fiber Rsch. Int'l, LLC*, 310 F. Supp. 3d 1089, 1114 (S.D. Cal. 2018). And again, because counterfeit marks are inherently confusing, a plaintiff can show likelihood of confusion by showing the infringing mark is counterfeit. *Coach*, 2013 WL 5406220, at *3.

Accepting the allegations in Plaintiffs' complaint as true, the Court finds that Plaintiffs have shown that Shanghai Haoqi is liable on the claim for false designation of origin. UL owns the right to its Marks. Dkt. No. 1 ¶ 4. Shanghai Haoqi sold counterfeit products bearing the UL Marks in commerce. *Id.* ¶ 36–38. Because Shanghai Haoqi's marks are counterfeits, they are likely to confuse or deceive as to the origin of the goods. *Id.* ¶ 53. Shanghai Haoqi's deceptive acts have also jeopardized its customers' trust in Amazon, tarnished Amazon's brand and reputation, and harmed Amazon and its customers. *Id.* ¶¶ 52, 55. For these reasons, the second and third *Eitel* factors favor a default judgment for Plaintiffs on their false designation of origin claim.

c. Plaintiffs' CPA Claim

"To state a claim under the CPA, a plaintiff must allege: '(1) [an] unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; [and] (5) causation.'" *Trader Joe's Co. v. Hallatt*, 835 F.3d 960, 976 (9th Cir. 2016) (quoting *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 535 (Wash. 1986)). "Absent unusual circumstances, the analysis of a CPA claim will follow that of the trademark infringement and unfair competition claims; it will turn on the likelihood of confusion regarding a protectable mark." *Safeworks, LLC v. Teupen Am., LLC*, 717 F. Supp. 2d 1181, 1192 (W.D. Wash. 2010).

As the Court has found that Plaintiffs have sufficiently stated their trademark infringement claims, and alleged that Shanghai Haoqi used counterfeit versions of the UL Marks that are inherently confusing, the Court finds that Plaintiffs have stated a claim for violation of the CPA as well. Therefore, the Court finds that the second and third *Eitel* factors favor a default judgment for Plaintiffs on their CPA claim.

d. Amazon Services' Breach of Contract Claim

To prevail on a breach of contract claim, a plaintiff must show (1) a valid contract existed between the parties, (2) the contract was breached, and (3) damages resulted. *Lehrer v. State, Dep't of Soc. & Health Servs.*, 5 P.3d 722, 727 (Wash. Ct. App. 2000).

The complaint establishes all three of these elements. First, Amazon Services alleges that when Shanghai Haoqi established its selling account, it agreed to the BSA and Amazon's anti-counterfeiting policy and other policies, and these contracts are valid. Dkt. No. 1 ¶¶ 29–35. Second, Amazon Services alleges that Shanghai Haoqi's sale of counterfeit UL-certified products constituted a material breach of the BSA. *Id.* ¶¶ 65–67. Third, Amazon Services alleges that Shanghai Haoqi's breach resulted in the sale of $149,501.00 in electric bicycles with counterfeit

UL Marks. Dkt. No. 19 ¶ 3. Accepting these allegations as true, Amazon Services has sufficiently stated its claims for breach of contract. The Court thus finds the second and third *Eitel* factors favor a default judgment for Amazon Services on its breach of contract claim.

*3. The Sum of Money at Stake*

For the fourth *Eitel* factor, the Court considers the amount of money at stake in relation to the seriousness of the defendant's conduct. *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1176 (C.D. Cal. 2002). The Court also assesses whether the amount of monetary damage requested is proportional to the harm caused by the defendant. *See Curtis*, 33 F. Supp. 3d at 1212.

In this case, Plaintiffs allege that Shanghai Haoqi willfully infringed UL's Marks and sold $149,501.00 of counterfeit products. *See* Dkt. No. 19 ¶ 3. The amount UL seeks to recover ($448,503.00) is substantial, but proportional to the scale of the misconduct alleged, and the Court finds that this factor therefore favors entry of a default judgment.

*4. Possibility of Dispute over Material Facts*

For the fifth *Eitel* factor, the Court considers the possibility of dispute concerning material in facts. *Eitel*, 782 F.2d at 1471–72. Upon default, a plaintiff's factual allegations of the complaint will be taken as true. *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977). Because Shanghai Haoqi failed to appear or otherwise respond, it has failed to rebut Plaintiffs' allegations or evidence provided to support their claims. Therefore, given that no dispute of material facts is apparent, the Court finds that the fifth *Eitel* factor favors entry of a default judgment.

*5. Possibility of Excusable Neglect*

For the sixth *Eitel* factor, the Court assesses whether the defendant's default was due to excusable neglect. Shanghai Haoqi waived service of process (Dkt. No. 8), and yet it made no apparent effort to respond by the deadline, the Court finds that the sixth *Eitel* factor favors entry

of a default judgment. *See Landstar Ranger, Inc. v. Parth Enters.*, 725 F. Supp. 2d 916, 922 (C.D. Cal. 2010).

*6. Policy in Favor of Decision on the Merits*

For the seventh *Eitel* factor, the Court addresses the strong policy preference in favor of resolution of Plaintiffs' claims on the merits. *See Eitel*, 782 F.2d at 1472 ("Cases should be decided upon their merits whenever reasonably possible."). However, a defendant's "failure to answer Plaintiffs' Complaint makes a decision on the merits impractical, if not impossible." *PepsiCo*, 238 F. Supp. 2d at 1177.

Thus, although the Court's preference for resolving issues on their merits weighs against entry of a default judgment, this factor is outweighed by the other *Eitel* factors, as summarized here. Accordingly, the Court finds that Plaintiffs' motion for default judgment should be granted.

**D. UL Is Entitled to Statutory Damages.**

Having found that Plaintiffs are entitled to entry of a default judgment, the Court now turns to consider the relief requested by Plaintiffs.

The Lanham Act provides for three types of remedies in counterfeit trademark cases. *See Y.Y.G.M. SA v. Redbubble, Inc.*, 75 F.4th 995, 1007 (9th Cir. 2023).

> When a plaintiff establishes a violation of any registered mark, subsection (a) makes available to the plaintiff, subject to equitable considerations, "(1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." [15 U.S.C.] § 1117(a). For intentional violations, subsection (b) provides for "three times such profits or damages, whichever amount is greater, together with a reasonable attorney's fee" and further specifies that "the court may award prejudgment interest on such amount[.]" § 1117(b). Subsection (c) allows a plaintiff to elect, "instead of actual damages and profits under subsection (a), an award of statutory damages" between $1,000 and $200,000 per counterfeit mark, or for a willful violation, up to $2,000,000 per counterfeit mark. § 1117(c).

*Id.* A willful trademark infringement occurs when "the defendant's actions are willfully calculated to exploit the advantage of an established mark." *DC Comics v. Towle*, 802 F.3d 1012, 1026 (9th

Cir. 2015) (quoting *Lindy Pen Co., Inc. v. Bic Pen Corp.*, 982 F.2d 1400, 1406 (9th Cir. 1993)). As the Court accepts all factual allegations as true when resolving a motion for default judgment, the Court accepts a plaintiff's allegation of a defendant's willful infringement. *See Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 702 (9th Cir. 2008).

Plaintiffs allege in their complaint that Shanghai Haoqi acted willfully by intentionally causing customer confusion regarding the certification and authenticity of the products sold. *See* Dkt. No. 1 ¶¶ 6, 39, 54. With respect to this willful infringement, UL elects to recover statutory damages. Dkt. No. 17 at 15–17. Specifically, UL requests statutory damages totaling $448,503.00, which represents three times the Shanghai Haoqi's alleged aggregate sales of bicycles bearing counterfeit UL Marks. Dkt. No. 19 ¶ 3.

To calculate statutory damages for willful infringement, courts consider the need to: (1) "compensate" the plaintiffs for the damage the defendant's actions caused; (2) "deter" the defendants from violating the trademarks; and (3) "punish" the defendants for willfully violating the trademarks. *See Philip Morris USA Inc. v. Liu*, 489 F. Supp. 2d 1119, 1124 (C.D. Cal. 2007). The Court finds that the statutory damages requested by UL will compensate UL for the harm caused by Shanghai Haoqi's conduct, punish Shanghai Haoqi for that conduct, and deter it in the future. Accordingly, the Court will award UL the statutory damages it requests.

**E. Plaintiffs Are Entitled to a Permanent Injunction.**

Plaintiffs request the Court permanently enjoin Shanghai Haoqi from its infringing uses of the UL Marks and from selling counterfeits in the Amazon store. Dkt. No. 1 at 19–20, Dkt. No. 17 at 17–20.

The Court has authority under 15 U.S.C. § 1116(a) to grant injunctions according to principles of equity and upon such terms as the court may deem reasonable to prevent the violation of any right of the trademark owner. *Reno Air Racing Ass'n., Inc. v. McCord*, 452 F.3d 1126, 1137

(9th Cir. 2006). In addition, the CPA also allows parties to seek a permanent injunction to prevent further violations. WASH. REV. CODE § 19.86.090. A plaintiff seeking a permanent injunction must satisfy the following four elements. First, the plaintiff must show that it has suffered an irreparable injury. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). Second, the plaintiff must show that remedies available at law, such as monetary damages, are inadequate to compensate for the irreparable injury. *Id.* Third, the plaintiff must show that a remedy in equity is warranted considering the balance of hardships between the plaintiff and defendant. *Id.* Fourth, the plaintiff must show that the public interest would not be disserved by a permanent injunction. *Id.*

The Court finds that Plaintiffs have satisfied the first element, because a finding that a plaintiff's trademark has been infringed creates a rebuttable presumption that a plaintiff suffered an irreparable injury. *See* 15 U.S.C. § 1116; *T-Mobile USA, Inc. v. Terry*, 862 F. Supp. 2d 1121, 1133 (W.D. Wash. 2012). Shanghai Haoqi has not rebutted the presumption.

Plaintiffs also have satisfied the second element because they have shown that remedies at law are inadequate to compensate for their irreparable injury. Generally, monetary damages alone are inadequate to remedy trademark infringement. *Treemo, Inc. v. Flipboard, Inc.*, 53 F. Supp. 3d 1342, 1367 (W.D. Wash. 2014). Plaintiffs have alleged damage to their businesses, reputations, and goodwill that cannot be fully resolved via monetary damages. Dkt. No. 1 ¶¶ 48, 53, 55, 57, 62.

Plaintiffs have satisfied the third element as well, as a balancing of hardship warrants a permanent injunction. On one hand, there is no legitimate interest in selling counterfeit products. *T-Mobile*, 862 F.Supp.2d at 1133–34. Therefore, there is no hardship for Shanghai Haoqi in this case. On the other hand, there are substantial threats to Plaintiffs' business reputation if the Court

does not enjoin Shanghai Haoqi's illegal actions. *See* Dkt. No. 1 ¶¶ 48, 53, 55, 57, 62. Thus, the balance of hardship tips in favor of Plaintiffs.

Finally, Plaintiffs have satisfied the fourth element, because a permanent injunction in this case would promote the public interest. A permanent injunction will benefit the public by preventing likelihood of confusion to consumers and minimizing the risk of purchasing fraudulent merchandise. *Treemo*, 53 F. Supp. 3d at 1368.

Because Plaintiffs have satisfied all four elements for a permanent injunction, the Court will grant Plaintiffs' request for a permanent injunction against Shanghai Haoqi.

## III. CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiffs' motion for default judgment (Dkt. No. 17) as follows:

1. Judgment will be entered against Defendant on UL's claim for Trademark Counterfeiting and Trademark Infringement (15 U.S.C. § 1114), Plaintiffs' claim for False Designation of Origin (15 U.S.C. § 1125(a)), Plaintiffs' claim for Violation of the CPA (WASH. REV. CODE § 19.86.010, *et seq.*), and Amazon.com Services LLC's claim for Breach of Contract.
2. The Court awards UL statutory damages in the amount of $448,503.00 based on Defendant's willful violations of the Lanham Act for counterfeit sales through the HAOQI EBIKE DIRECT Selling Account.
3. Defendant and its officers, agents, servants, employees, and attorneys, and all others in active concert or participation with them who receive actual notice of the order, are hereby permanently ENJOINED AND RESTRAINED from:
    a. selling counterfeit or infringing products in Amazon's stores;
    b. selling counterfeit or infringing products to Amazon or any Amazon affiliate;

c. importing, manufacturing, producing, distributing, circulating, offering to sell, selling, promoting, or displaying any product using any simulation, reproduction, counterfeit, copy, or colorable imitation of UL's brand or trademarks, or which otherwise infringes UL's intellectual property, in any store or in any medium, including without limitation falsely advertising or implying any product as being "UL Certified" or "UL Tested" when the product has not been tested or certified by UL; and

d. assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraphs (a) through (c) above.

4. The Court retains jurisdiction over this case for the purpose of enforcing this Order and Injunction, and for any supplemental proceedings that may be authorized by law.

5. Plaintiffs' counsel is hereby directed to provide notice of this Order and Injunction on Defendant via the email address Defendant used to transmit its waiver of service and via the mailing address listed in that waiver. Dkt. No. 8.

Dated this 6th day of November, 2026.

Kymberly K. Evanson
United States District Judge